UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ESOS RINGS, INC.,

                              Plaintiff,

-vs-

TOKENIZE INC.,

                              Defendant.

_____

DECISION AND ORDER

20-CV-6289 (CJS)

## INTRODUCTION

This is an action brought by Plaintiff Esos Rings, Inc. ("Esos") against Defendant Tokenize Inc. ("Tokenize"), for patent infringement.  The matter is presently before the Court on Defendant Tokenize's motion to stay the action pending resolution of a state court case, and Plaintiff Esos' motion for a preliminary injunction.  Mot. to Stay, May 15, 2020, ECF No. 7; Mot. for Prelim. Inj., May 27, 2020, ECF No. 15.  For the reasons that follow, both Defendant Tokenize's motion to stay [ECF No. 7], and Plaintiff Esos' motion for a preliminary injunction [ECF No. 15], are denied.[1]

## BACKGROUND

This litigation centers around U.S. Patent No. 10,412,558 (the "'558 Patent"), entitled "Contact Information Social Exchange Method and System."  Compl., ¶ 12,

_____

[1] In the Court's best efforts to accommodate the parties' accelerated timetable after Esos' motion for a preliminary injunction on May 27, 2020, the Court heard oral argument on the motions on June 24, 2020, and issued a text order denying the parties' motions on June 29, 2020.  Due to the complexity of the matters involved, the Court could not produce a full written decision on the issues until now.

May 4, 2020, ECF No. 1.  The patent covers, *inter alia,* a near field communication-based wearable computer in a ring form ("NFC ring") that an individual can wear on his or her finger to replace credit cards and house keys.  Compl. at ¶ 5, 12.  Esos, a Delaware corporation with its principal place of business in California, has been assigned and is now the lawful owner of the entire right, title and interest in and to the '558 Patent.  Compl. at ¶ 11.  Esos claims that its product, the Elysii Ring, is an embodiment of the '558 Patent and is currently in production, with contracts potentially worth millions of dollars to commence distribution in the marketplace.  Mem. of Law Mot. for Prelim. Inj., 1, May 27, 2020, ECF No. 15-1 ("Prelim. Inj. Mem.").

Tokenize began beta testing of its product, the Token Ring, in Rochester, New York as early as January 2019.  Compl. at ¶ 13.  Like the Elysii Ring, the Token Ring is also a wearable computer configured as a ring, and includes a transceiver embedded in a band portion of the ring enabling Bluetooth and near-field communication ("NFC"), to allow contactless payments and building access.  Compl. at ¶ 21–22.  At the motion hearing on June 24, 2020, Tokenize admitted that it is presently producing the Token Ring and offering it for presale, and that it intends to begin shipping the product to purchasers by the end of June 2020.  Esos believes that the Token Ring infringes its '558 Patent.

On September 26, 2019, Esos notified Tokenize in writing that the '558 Patent had issued to Esos, and provided Tokenize a copy of the patent.  Compl. at ¶ 14.  Nevertheless, Tokenize began accepting orders for the Token Ring in February 2020,

and has notified purchasers that it plans, as indicated above, to ship the Token Ring beginning in June 2020.  Compl. at ¶ 15–16.  On May 4, 2020, Esos filed the instant action, alleging that the Token Ring infringes Esos' '558 Patent, and asking for a declaratory judgment, injunctive relief, money damages, and attorney fees.  Tokenize has moved the Court to stay this action on the basis of litigation Esos initiated in 2017 in California state court, which is against a non-party to this case to settle ownership of a different patent.  Esos opposes the motion to stay, and has filed a motion for a preliminary injunction to prevent Tokenize from shipping its Token Ring to customers before the resolution of the present infringement action.

## MOTION TO STAY

Tokenize asks this Court to stay the present patent infringement case until the resolution of the California state court action that Esos initiated in 2017.  Tokenize notes that the '558 Patent at issue in the present case is a "continuation patent application" of U.S. Patent No. 9,313,609 ("'609 Patent"), and that the California case involves a dispute over ownership of the '609 Patent.  Mem. of Law in Support of Mot. to Stay, 2, May 15, 2020, ECF No. 7-2.  Citing § 306 of the Manual of Patent Examining Procedure, Tokenize claims that under federal law, "whomever the California [s]tate [c]ourt determines to own the rights of the '609 Patent will also own the rights to the '558 Patent."  *See Assignment of Division, Continuation, Substitute, and Continuation-in-Part in Relation to Parent Application* (R-07.2015), MPEP § 306. Hence, Tokenize argues that "[a] stay pending resolution of the California [s]tate [a]ction is in the best interest of the parties and the Court, and promotes judicial

economy" because the state action will resolve an ownership dispute over the '558 Patent.

Esos admits that in 2017 it initiated a state court action in California against the inventor listed on the '558 Patent, Joseph Prencipe, and third-party McLear & Co. Opp. to Mot. for Stay, 6, June 10, 2020, ECF No. 19. Esos also admits that it brought the California state court action to enforce its rights under the '609 Patent, but points out that there are no challenges in the California state action to the '558 Patent at issue in this case. *Id.* Additionally, Esos argues that its motion for preliminary injunction must be decided before Tokenize's motion to stay, that Tokenize offers no sound basis for this Court to abstain from its obligation to exercise jurisdiction over Esos' patent infringement claim, and that there are no "exceptional circumstances" warranting a stay of the present action. *Id.*

"Refusal of a federal court to exercise its jurisdiction by either dismissing the claims or staying the action in favor of another court is a rare occurrence and is only done in limited circumstances that 'would clearly serve an important countervailing interest.'" *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 216 (E.D.N.Y. 1994) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). Such abstention by a federal court is only appropriate in narrowly circumscribed instances, such as where a federal constitutional issue might be avoided by a state court decision, where difficult questions of state law are presented that would have substantial impact on important public policy, or where federal jurisdiction has been invoked to restrain state criminal proceedings. *Loral Fairchild*

4

*Corp.*, 840 F. Supp. at 216 (citations omitted).  *See also Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 360 (2d Cir. 1985) (stating "abstention from the exercise of federal jurisdiction is the exception, not the rule").  None of the aforementioned issues are present in the instant case.

In addition, "there are other principles unrelated to considerations of constitutional adjudication and comity underlying the doctrines of abstention . . . referred to as the 'exceptional circumstances test' . . . ."  *Telesco*, 765 F.2d at 361 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1 (1983)).  Given the "virtually unflagging obligation" of federal courts to exercise the jurisdiction assigned them, these principles rarely apply.  *Colorado River Water Conservation Dist.*, 424 U.S. at 818.  They include: (1) a court first assuming jurisdiction over real property may exercise that jurisdiction to the exclusion of other courts; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the fact that federal law provides the rule of decision on the merits; and, (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22–24.

The "extraordinary circumstances test" should not be applied as a mechanical checklist to the decision whether to stay a federal action because of parallel state-court litigation, but rather the court must undertake "a careful balancing of the

important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16. "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.*

As Esos rightly notes, there are no exceptional circumstances present in this case that would justify this Court's abstention from the exercise of its jurisdiction. There is no real property at issue; only one party to this case is involved in the California litigation, and that party is the non-movant who chose to file in this district; the issues in the two cases are distinct; federal law will govern the resolution of this patent infringement case; and the state court's decision will not fully protect Esos' rights in the '558 Patent, if indeed they are being infringed.  Accordingly, Tokenize's motion to stay [ECF No. 7] is denied.

PRELIMINARY INJUNCTION

Esos argues that this Court should grant "preliminary injunctive relief, pending a full trial on the merits, to prevent irreparable harm to Esos that will inevitably flow from a competitor entering the highly valuable field of contactless payments using Esos' patented smart ring technology." Prelim. Inj. Mem., 2–3, ECF No. 15-1.  In support of its position, Esos claims that it is likely to succeed on its patent infringement claim, that it will suffer irreparable harm without an injunction, that the balance of hardships weighs decidedly in its favor, and that enjoining Tokenize advances the public interest.  *Id.*

6

In response, Tokenize counters that Esos fails to show both irreparable harm, and that it is likely to succeed on the merits.  Mem. in Opp. to Prelim. Inj., June 11, 2020, ECF No. 22.  Tokenize also claims that the balance of hardships weighs in Tokenize's favor, and that the public interest does not favor granting an injunction. *Id.*

A preliminary injunction is a "drastic and extraordinary remedy" which, to obtain, a "moving party must demonstrate a reasonable likelihood of success on the merits, irreparable harm in the absence of a preliminary injunction, a balance of hardships tipping in its favor, and the injunction's favorable impact on the public interest." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016) (citing *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry.*, 357 F.3d 1319, 1324–25 (Fed. Cir. 2004)).  "[A] preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (citation and internal quotation marks omitted).  Nevertheless, a "patentee's entitlement to such an injunction is a matter largely within the discretion of the trial court." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375 (Fed. Cir. 2009).

"[A] movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm." *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300 (Fed. Cir. 2009) (citation omitted).  Put another way, "[w]hile granting a preliminary injunction

requires analysis of all four factors, a trial court may . . . deny a motion based on a patentee's failure to show any one of the four factors—especially either of the first two—without analyzing the others." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002).  Because the Court finds that Esos has failed to prove irreparable harm, its motion for a preliminary injunction [ECF No. 15] is denied.

Irreparable Harm

To show it will suffer irreparable harm if Tokenize is not enjoined from producing and delivering its Token Ring, Esos makes four arguments.  First, Esos argues that it will lose market share and access to customers.  Prelim. Inj. Mem. at 14.  Second, Esos argues that unless Tokenize is enjoined, other infringers will be encouraged to enter the market.  *Id.* at 17.  Third, Esos claims that it is probable that it will not be able to recover a money judgment against Tokenize.  *Id.* at 17.  Lastly, at the motion hearing on June 24, 2020, Esos stated that its case for irreparable harm "rises and falls" on the following list of *Hybritech* factors:

> (1) the field of technology covered by the . . . patent was new; (2) there was a substantial amount of competition in this field; (3) [the alleged infringer] has a very large presence in this field; (4) this is a field where technology changes fairly quickly; (5) there is a lot of research being done in this field; (6) the . . . patent could help [the patentee] establish a market position and create business relationships in the market; (7) by the time the litigation is finished, it is entirely possible that the value of the patent will be gone and that technology might well bypass it; (8) the potential injury is unpredictable; and, (9) in the absence of the injunction, other potential infringers will be encouraged to infringe.

*Hybritech Inc. v. Abbot Laboratories*, 849 F.2d 1446, 1456 (1988).

As evidence supporting its motion for a preliminary injunction, Esos filed declarations from Michelle Silverstein, founder and Chief Operating Officer of Esos, and from Rex Scates, a shareholder and Chief Technology Officer of Esos. Decl. of Michelle Silverstein, May 27, 2020, ECF No. 15-2 ("Silverstein Decl."); Decl. of Rex Scates, May 27, 2020, ECF No. 15-22 ("Scates Decl.").  In addition, Esos submitted a copy of the '558 Patent; a series of patent assignments to demonstrate ownership; a civil harassment restraining order Ms. Silverstein has against Joseph Prencipe, one of Esos' adversaries in the California state court action; copies of emails exchanged between counsel for the parties; public versions of verified complaints against Tokenize by a Board member and shareholder alleging misuse of funds; specification sheets for product components compatible with the '558 Patent; and a series of screenshots of Tokenize's product and announcements on Tokenize's website.  Exs., May 27, 2020, ECF Nos. 15-3 to 15-21.  Finally, with its reply brief, Esos also submitted documentation of several other smart rings: the "McLear ring product" and the "K-Ring," both of which are released only in the United Kingdom; Ring Theory's "Sesame Ring," a project run by college students which has apparently been out of production for several years; an image of a "smart ring" from ringly.com; and an email exchange with legal counsel for Motiv, a maker of smart ring fitness trackers.  Exs., June 17, 2020, ECF Nos. 30-1 to 30-17.

The Supreme Court has discarded the doctrine under which parties that could prove patent infringement were presumed to be irreparably harmed. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–94 (2006).  Consequently, in all cases the

burden is on the patentee – in this case Esos – to demonstrate that its potential losses cannot be compensated by monetary damages. *Id.* "[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement." *RMH Tech LLC v. PMC Indus., Inc.*, 352 F. Supp.3d 164, 199 (D. Conn. 2018) (quoting *Apple Inc. v. Samsung Elecs. (Apple III)*, 735 F.3d 1352, 1362 (Fed. Cir. 2013)).

### *Irreparable Harm*

Esos' first argument that it will suffer irreparable harm is that it will lose market share and access to customers. "[L]ost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction . . . ." *Automated Merch. Sys., Inc.*, 357 F. App'x at 301. If such proof were not required, courts would grant preliminary injunctions on the basis of speculative loss of market share, which would result in granting preliminary injunctions "in every patent case where the patentee practices the invention." *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed.Cir.1991).

Here, Esos' evidence with respect to loss of market share consists mainly of a series of market projections made by Esos executive Michelle Silverstein in her declaration. For instance, Silverstein projected that the smart ring device market in the United States will exceed $130 million in 2021, and that the number could be higher given the increasing popularity of contactless payment. Silverstein Decl. at ¶

10

24–26.  Silverstein also stated that she anticipates that contracts Esos has in place with two product distributors could result in up to 125,000 units sold in one contract, and over $7 million in revenue in the other.  Silverstein Decl. at ¶ 27–28.  Silverstein did not indicate that either of these contracts would be jeopardized by release of the Token Ring, and she did not provide any evidence of specific market opportunities Esos would be denied.  This showing was not sufficient to meet the burden on the patentee to demonstrate that its potential losses cannot be compensated by monetary damages.  *See, e.g., Automated Merch. Sys., Inc.*, 357 F. App'x at 301.

Second, Esos argues that the Court's failure to grant a preliminary injunction will encourage other infringers to enter the market.  In support of its argument, Esos points to the exhibits it provided of five other makers of smart rings that could quickly enter the payment processing market if Esos is not granted a preliminary injunction.  Yet while Esos' evidence shows that it is certainly *possible* that other infringers will enter the market, Esos does not offer any specific proof that it is likely.  For one, there is no evidence on the record as to the ease or difficulty of entry into Esos' market.[2] Issuing a preliminary injunction based only on a patentee's showing that there is a *possibility* of irreparable harm is inconsistent with the Supreme Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief.  *Winter v. Nat. Resources Def. Cncl., Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

---

[2] Indeed, based on the parties' papers, it appears that both Esos' and Tokenize's smart ring products have taken multiple years to develop and get to market.

Third, Esos claims that money damages will be insufficient because it will likely not be able to recover a money judgment against Tokenize. *Id.* at 17. In support of its claim, Esos points to an action in Delaware state court brought against Tokenize by one of its Board members and primary shareholders, who Tokenize admits was attempting to force a liquidity crisis. *See, e.g.*, Wagner Ex. 1, May 27, 2020, ECF No. 15-12. To be sure, a court may find that money damages are not an adequate remedy where locating and attaching assets sufficient to satisfy a money judgment would be exceedingly difficulty. *Canon Inc. v. GCC Intern. Ltd.,* 450 F. Supp.2d 243, 256 (S.D.N.Y. 2006) (finding money damages insufficient where the defendants' assets included a holding company in Hong Kong with an office in the British Virgin Islands, manufacturing affiliates in mainland China, and virtually no assets in the United States). However, while Esos here alleges that Tokenize may have liquidity issues, it offers no proof other than the pleadings in a suit by a discontented Board member. On the other hand, the parties agree Tokenize has made a number of pre-sales that will generate revenue in the very near future.

Finally, at the motion hearing, Esos expressed its willingness to rise and fall on the nine *Hybritech* factors set forth above. *See Hybritech Inc.*, 849 F.2d at 1456. However, before considering the *Hybritech* factors, the Court notes that "a patent holder seeking a preliminary injunction must establish, by admissible evidence, that absent issuance of the injunction, the patentee would likely suffer such harms as loss of good will, price erosion, or significant immediate harms such as laying off employees, or collapse of market presence." *Caldwell Mfg. Co. N. Am., LLC*, 2011 WL

3555833 at *3 (citing *Sanofi–Synthelabo v. Apotex Inc.*, 488 F.Supp.2d 317 (S.D.N.Y.,

2006)).  The case of *Celsis In Vitro, Inc. v. CellzDirect, Inc.* is instructive with respect

to the amount of evidence sufficient to warrant a preliminary injunction.  664 F.3d

922 (Fed. Cir. 2012).  In *Celsis*, the district court and the Federal Circuit found a

preliminary injunction was warranted based on irreparable harm where:

> Celsis [the patentee] offered testimony from its expert . . . on irreparable
> harm. In contrast, LTC did not offer expert testimony in rebuttal. . . . .
> To substantiate its claims, Celsis presented fact and expert testimony
> as well as specific financial records. Celsis presented evidence of LTC's
> significantly discounted prices as well as specific instances when
> customers purchased from LTC instead of Celsis. The record also shows
> that Celsis had a general no-discount policy to maintain its premium
> product pricing that it was forced to break in order to compete with LTC.
> The record included evidence that the LiverPool™ products are Celsis'
> flagship products and that the products are in their growth phase and
> will soon be entering the mature phase with the highest revenues and
> strongest market position. The record also included testimony that this
> market was particularly sensitive because customers buy in bulk and at
> irregular times, such that the loss of a single sale in this market may be
> more harmful than for products purchased daily.
>
> Then, Celsis proffered expert testimony on the damage to Celsis' price,
> reputation, and business opportunities. [The expert] testified to the
> irreversible price erosion. He also testified to the difficulty in
> quantifying the effect on reputation and business due to Celsis being
> precluded from marketing to potential and existing customers that it is
> the exclusive market leader . . . .

*Id.* at 930–31.

In any event, turning now to the *Hybritech* factors, the evidence proffered by

Esos is scant.  Esos does offer evidence to show the technology covered by the patent

seems to be new with respect to payment processing (though not other applications

such as fitness tracking), and that its patent has helped it to secure two potentially

large contracts in the market.  However, as indicated above, Esos' proof that other

potential infringers will be encouraged to infringe if a preliminary injunction does not issue is highly speculative. Moreover, Esos offers virtually no evidence to show that there is a substantial amount of competition in the field, that Tokenize has a "large presence" in the field, that the technology changes quickly, that there is a lot of research being done in the field, that the value of the patent may be gone by the time this litigation is finished, and that the potential injury is unpredictable. Without more substantial evidence, this Court cannot find that Esos is *likely* to suffer irreparable harm.

Given the relative lack of meaningful evidence, and the drastic and extraordinary nature of a preliminary injunction, the Court finds that Esos has failed to demonstrate that it will suffer irreparable harm.

*Causal Nexus*

Although neither party allocates much argument to this requirement, it is nonetheless true that where the patentee relies on lost sales to show irreparable harm, the patentee must also show a "causal nexus" between buyers' purchase of the accused product, and the features on the accused product that the patentee alleges to infringe on its patents. *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 (Fed. Cir. 2017). The infringing features need not necessarily "drive demand," but the patentee must be able "to make the causal connection between infringement and the relevant lost sales through evidence of various kinds, e.g., that the infringing features significantly increased the product's desirability, that soundly supports an inference of causation of a significant number of purchasers' decisions."

14

*Id*.  Based upon the parties' submissions, it appears that the products at issue in this case have relatively few features, and that payment processing appears to be the key function.  However, with respect to the Token Ring, the evidence submitted by Esos seems to reflect that other key distinctions may be "biometric security" and the payment platforms for which the rings are certified or approved.  Since Esos failed to show irreparable harm, the Court need not address the causal nexus requirement any further at this time.

<u>Likelihood of Success on the Merits, Balance of Hardships, Public Interest</u>

As previously stated, a plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  *Winter*, 555 U.S. at 20.  The Federal Circuit requires that a trial court engage in an evaluation and balancing of these four factors "before *granting* a preliminary injunction."  *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996) (emphasis in the original). "Nevertheless, more limited analysis may support a trial court's denial of a preliminary injunction."  *Id.*  Because the Court finds that Esos has failed to demonstrate it will suffer irreparable harm if a preliminary injunction does not issue, the Court need not engage in an analysis of likelihood of success on the merits, the balance of hardships, or the impact of a preliminary injunction on the public interest. Having weighed the arguments of the parties against the form and drastic magnitude of the relief requested, the Court denies Esos' motion for a preliminary injunction.

CONCLUSION

Both parties having failed to carry the burden of their respective motions, it is hereby

ORDERED that Defendant Tokenize, Inc.'s motion to stay the proceedings [ECF No. 7] is denied, and it is further

ORDERED that Plaintiff Esos Rings, Inc.'s motion for a preliminary injunction [ECF No. 15] is denied.

SO ORDERED.

Dated:      July 7, 2020
            Rochester, New York


CHARLES J. SIRAGUSA
United States District Judge